**John E. Phillips, Attorney at Law, P.C.**
975 N. Silverbell Rd. #87968
Tucson, AZ 85754
Telephone: (520) 441-2800
E-mail: John@Johnephillips.com
State Bar Number: 015243
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Susan Drake, <br> Plaintiff, <br> vs. <br> Lincoln National Corporation, The Lincoln National Life Insurance Company, Liberty Life Assurance Company of Boston d/b/a Lincoln Life Assurance Company of Boston, Yavapai Regional Medical Center Foundation, Yavapai Regional Medical Center Plan, <br> Defendants. | Case No: <br><br> **Complaint** |

Now comes the Plaintiff Susan Drake (hereinafter referred to as the "Plaintiff"), by and through her attorney, John E. Phillips, and complaining against the Defendants, she states:

**Jurisdiction**

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

**Parties**

2. Plaintiff is a resident of Yavapai County, Arizona.

3. Upon information and belief, Yavapai Regional Medical Center Foundation (hereinafter the "Company"), sponsored, administered, and purchased a group long term disability insurance policy which was insured by Liberty Life Assurance Company of Boston doing business as Lincoln Life Assurance Company of Boston (hereinafter "Liberty"). The specific Liberty group disability policy is known as Policy No. GF3-860-066653-01 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring and purchasing the Liberty policy was to provide disability insurance for its employees. Upon information and belief, the Liberty policy may have been included in and part of the Group Long Term Disability Plan for Employees of the Company (hereinafter "Plan") and was created to provide the Company's employees with disability benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1). Lincoln National Corporation (hereinafter "Lincoln National") is the parent company of both Lincoln and Liberty.

4. The Policy states its: "Governing Jurisdiction is Arizona and subject to the laws of that State."

5. Upon information and belief, The Lincoln National Life Insurance Company (hereinafter "Lincoln") functioned as the claims administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company, Liberty, and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln. The Company is responsible for Lincoln's actions and decisions.

6. Lincoln is an Indiana corporation with its principal place of business at 1301 S Harrison St., Fort Wayne, IN 46802-3425 and is present and doing business in the State of Arizona.

7. Lincoln National is an Indiana Corporation with its principal place of business at 150 North Radnor Chester Road, Radnor Financial Center, Radnor, PA 19087.

8. Liberty is a Massachusetts corporation with its principal place of business at 175 Berkeley St, Boston, MA 02117 and is present and doing business in the State of Arizona.

9. The Company is an Arizona corporation with its principal place of business at 3800 North Central Avenue, Suite 460, Phoenix, AZ 85012 and is present and doing business in the State of Arizona including in Pima County, Arizona.

10. Lincoln operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits.

11. Defendants saved money when it denied Plaintiff's claim.

12. The Company, Lincoln, Liberty, and the Plan are present within the State of Arizona and the events giving rise to this Complaint, including the breach, occurred within the State of Arizona.

**Venue**

13. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**Nature of the Complaint**

**COUNT 1 - ERISA**

14. Plaintiff incorporates by reference the facts alleged in paragraphs 1-13.

15. An inherent conflict of interest exists when an insurance company both pays benefits to, and administers claims of, plan beneficiaries. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.,* 125 F.3d 794, 797 (9th Cir. 1997) ("Given Standard's dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation, and must take this factor into account.")

16. Because an insurer acting as claim administrator is inherently in a superior position to claimant, in this case a *disabled* claimant which for a time Defendants even acknowledged, the United States Congress recognized the necessity of enacting clear disclosure requirements through passage of the Employee Retirement Income Security

1  Act ("ERISA") to ensure an insured "knows exactly where he stands." *Firestone Tire and*
2  *Rubber Company v. Burch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80, 103 (1989);
3  *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 106, 128 S.Ct. 2343, 171 L.Ed.2d 299
4  (2008) ("That conclusion is clear where it is the employer itself that both funds the plan
5  and evaluates the claim, but a conflict also exists where, as here, the plan administrator is
6  an insurance company. For one thing, the employer's own conflict may extend to its
7  selection of an insurance company to administer its plan. For another, ERISA imposes
8  higher-than-marketplace quality standards on insurers, requiring a plan administrator to
9  "discharge [its] duties" in respect to discretionary claims processing "solely in the
10  interests of the [plan's] participants and beneficiaries," 29 U.S.C. § 1104(a)(1);
11  underscoring the particular importance of accurate claims processing by insisting that
12  administrators "provide a 'full and fair review' of claim denials," *Firestone, supra*, at
13  113, 109 S.Ct. 948; and supplementing marketplace and regulatory controls with judicial
14  review of individual claim denials, see § 1132(a)(1)(B).")
15        17.    Incident to her employment, Plaintiff was a covered employee pursuant to
16  the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).
17  Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant
18  to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee
19  benefits she may be entitled to from the Company, the Plan and/or any other Company
20  Plan as a result of being found disabled in this matter.
21        18.    After working for the Company as a loyal employee for 16 years, Plaintiff
22  became disabled due to serious medical conditions and was unable to work in her own
23  occupation as a Registered Nurse (Dictionary of Occupational Titles No. 075.364-010).
24  Plaintiff has remained disabled as that term is defined in the relevant Policy
25  continuously since August 29, 2020 and has not been able to return to work in Plaintiff's
26  own occupation as a result of her serious medical conditions.
27        19.    The relevant policy provisions and definition of disability governing
28  Plaintiff's long-term disability claim is as follows:
29   "Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

    "Disability" or "Disabled" means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.

"Injury" means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

"Sickness" means illness, disease, pregnancy or complications of pregnancy.

"Material and Substantial Duties" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

"Partial Disability" or "Partially Disabled" means the Covered Person, as a result of Injury or Sickness, is able to:

    1. perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

    2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

    3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

"Physician" means a person who:

    1. is licensed to practice medicine and is practicing within the terms of his license; or

    2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

    It does not include a Covered Person, any family member or domestic partner.

"Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

    1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

    2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

    3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

    Proof must be submitted in a form or format satisfactory to Liberty.

"Regular Attendance" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

Disability Benefit

    When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to

any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

20. Lincoln found Plaintiff disabled as of August 30, 2020, and began paying Plaintiff long-term disability benefits on November 28, 2020.

21. On February 26, 2021, Lincoln notified Plaintiff her long-term disability benefits were terminated as of February 27, 2021 on the purported basis that Plaintiff's treating physician had concluded Plaintiff had no restrictions or limitations preventing Plaintiff from working.

22. The Policy provides a maximum of 24 months of payable benefits, given Plaintiff first became disabled at 65 years of age and as Lincoln terminated Plaintiff's long-term disability benefits after only three months of paid benefits, 21 months of benefits remain unpaid.

23. Plaintiff's treating physician Dr. Blake Peterson found Plaintiff had no restrictions or limitations due to Plaintiff's reconstructive foot surgery, but Plaintiff remained severely limited specifically to avoid worsening of Plaintiff's pes cavus of the feet bilaterally, right peroneal muscle injury, calcaneal inversion and plantar flexed first ray of the feet bilaterally.

24. Lincoln also hired a desktop-reviewing, non-examining, medical consultant Dr. Chirag Patel who instructed Dr. Peterson to contact Dr. Patel within 10 days of February 23, 2021 to discuss Plaintiff's medical conditions.

25. On February 23, 2021, prior to waiting for Dr. Peterson's response, Dr. Patel informed Lincoln that he was unable to speak with Dr. Peterson, and stated to Lincoln that Plaintiff's neuralgia, neuritis, and instability are "not impairing" despite acknowledging these impairments require ongoing use of a right ankle brace and resulted in continuing pain and discomfort.

26. Upon information and belief, Dr. Patel's incomplete report (by Dr. Patel's own terms) was purchased by Lincoln for $472.50 through Network Medical Review Company, LTD., an ExamWorks Company.

27. Upon information and belief, Lincoln hired Dr. Patel based on Lincoln's biased intention to terminate Plaintiff's claim as ExamWorks' history of bad faith and post-hoc approach to medical analysis is a common issue before the courts. *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061-KES, pg. 1 (D. S.D. 2021) (ordering Liberty to provide additional discovery to address Haukaas' claims of bad faith by Liberty in hiring ExamWorks to provide a medical opinion from a non-examining, desktop reviewing medical consultant who supported the termination of Haukaas' long-term disability benefits after Liberty found Haukaas could not perform the substantial and material duties of her own occupation as a certified nursing assistant.); *Paschal v. Am. Family Mut. Ins. Co*., No. C14-1640RSM, pg. 8 (W.D. Wash. 2015)(granting Paschal's motion to compel discovery, requiring American Family Mutual Insurance Company to disclose information about payments made to its third party non-examining medical consultants for the six years prior, as such information is relevant to the conflict of interest American Family Mutual Insurance Company had in both being responsible for administering Paschal's claim and in paying Paschal's benefits if such a claim is awarded.)

28. Dr. Peterson sent Dr. Patel a letter on March 8, 2021, explaining Plaintiff did not have any restrictions from a surgical stand point, but Plaintiff's pain and disability

due to her underlying cavus foot deformity remained, yet at that point Lincoln had already terminated Plaintiff's long-term disability benefits on the false representations and conclusions of Dr. Patel.

29. Plaintiff appealed, obtaining and submitting to Lincoln detailed medical statements from Dr. Peterson, as well as vocational opinion evidence verifying the actual requirements of Plaintiff's own occupation as a Registered Nurse.

30. Dr. Peterson found Plaintiff would be:
   a. Absent from work as a result of impairments or treatment more than four times a month.
   b. Plaintiff could only "occasionally" (defined as "up to one-third of an 8-hour workday") lift and/or carry 10 pounds.
   c. Plaintiff could only "frequently" (defined as "two-thirds of an 8-hour work day") lift and/or carry less than five pounds.
   d. Plaintiff could only stand in an 8 hour working day (with normal breaks) and be productive less than one hour.
   e. Plaintiff could only sit in an 8-hour work day and be productive six hours.
   f. Plaintiff could never safely: climb, balance, stoop, kneel, crouch, or crawl.

31. Vocational Expert Mr. Mark Kelman confirmed Plaintiff's limitations and restrictions as determined by Dr. Peterson precludes Plaintiff from performing the material and substantial duties of her own occupation as a registered nurse, which requires the ability to lift and carry 50 pounds occasionally, 20 pounds frequently, and that Plaintiff could not sustain work as a registered nurse if she will miss more than four times a month on a regular and ongoing basis.

32. On May 16, 2022, Lincoln denied Plaintiff's appeal, stating an unnamed "Disability Nurse Case Manager" had concluded there was insufficient evidence to support impairment or restriction after February 27, 2021 and that updated examination findings and medical records would be needed to determine ongoing impairments and restrictions after February 27, 2021.

33. Lincoln's reliance on a lack of specific examination of Plaintiff is clear bad faith, as Lincoln purportedly relies on the ***non-examining*** medical opinions of Dr. Patel and a "Disability Nurse Case Manager" to conclude Plaintiff had medically improved to the point of no longer being disabled, a fact Lincoln acknowledged existed mere months previously, and in fact Lincoln has no evidentiary basis for concluding Plaintiff medically improved as of February 27, 2021.

34. Further, the failure to identify the "Disability Nurse Case Manager" is itself a violation of ERISA, as under 29 C. F. R. § 2560.503-1(h)(3)(iv), any adverse benefit determination from a group health plan as this Plan is, must "provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination."

35. Lincoln further violated ERISA, under 29 C. F. R. § 2560.503-1(g)(1)(vii)(A), as Lincoln is required to discuss the views presented both by the claimant, as well as the health care professionals treating the claimant and the vocational professionals who evaluated the claimant, instead falsely claiming "there have been on [sic.] other treating providers imposing restrictions or limitations beyond January 18, 2021."

36. Lincoln even admits that while Lincoln had the right to obtain an examination of Plaintiff, they chose not to because: "an IME completed well beyond a year after benefits has ended would not be an accurate review of restrictions and limitations dating back to February 27, 2021." Yet Lincoln provides no basis for asserting Plaintiff's coverage is limited to the date Lincoln terminated Plaintiff's benefits, and relies instead on Dr. Patel's report which was not based on an actual examination of Plaintiff, and the report of an unnamed "Disability Nurse Case Manager."

37. Lincoln did not provide Plaintiff a full and fair review of Plaintiff's appeal of Lincoln's termination of Plaintiff's long-term disability benefits.

38. Pursuant to 29 U. S. C. § 1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

39. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A. R. S. § 20-462, or at such other rate as is equitable and appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

40. As a direct result of Lincoln decision to deny Plaintiff's disability claim and failure to provide a full and fair review of Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

41. Finally, under 29 U. S. C. § 1132(c)(1) Lincoln was obligated to provide Plaintiff a copy of Plaintiff's claim file within 30 days of Plaintiff's request, a necessary action to determine the merit of any civil action, and to verify the accuracy or Lincoln's characterization of the evidence. A particularly important action given Lincoln's bad faith actions identified throughout this complaint.

42. On May 27, 2022, Plaintiff through Counsel requested a complete copy of Plaintiff's claim file and Lincoln's own internal notes confirm this request was received by Lincoln that date.

43. On June 3, 2022, Lincoln misinformed Plaintiff that Plaintiff's claim file was to be provided "under separate cover" but no such claim file was attached in any format to Lincoln's notice.

44. On September 9, 2022, Plaintiff notified Lincoln that no claim file was received and Lincoln was two months late in fulfilling their statutory obligations under ERISA.

45. On September 15, 2022, Lincoln left a phone message for Plaintiff via Counsel, asserting they had previously left a phone message directing Plaintiff to provide

an email address for receipt of Plaintiff's claim file yet Plaintiff never received any such phone message.

46. On September 19, 2022 did Plaintiff finally receive a copy of Plaintiff's claim file, 85 days late and there is no evidence within Lincoln's internal notes that any phone message was sent suggesting Plaintiff was to provide a phone message, and it is Defendant's responsibility to timely provide Plaintiff her claim file under ERISA.

47. As Lincoln's untimely disclosure after 115 days was not due to events beyond the control of Lincoln, under 29 U. S. C. § 1132(c)(1) Plaintiff is entitled to statutory damages calculated at a rate of $100 per day after 30 days of delay, amounting to $8,500 in damages.

48. Lincoln did not provide Plaintiff a full and fair review of Plaintiff's appeal of Lincoln's unreasonable termination of Plaintiff's long-term disability benefits and Plaintiff is entitled to the immediate payment of the remaining 21 months of benefits payments, which at a rate of $4,052.88 per month amounts of $85,110.48 in owed benefits.

### COUNT 2 – Bad Faith and Violation of the Covenant of Good Faith and Fair Dealing

49. Plaintiff incorporates by reference the facts alleged in paragraphs 1-48.

50. An Insurer acts in bad faith where it "intentionally denies, fails to process, or pay a claim without a reasonable basis." *Zilisch v. State Farm Mutual Auto Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (Ariz. 2000).

51. The duty of good faith and fair dealing is implied in every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986).

52. The legal test is whether "reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.*

53. Lincoln's position throughout the administrative claim is Plaintiff is not limited in any way because purportedly Plaintiff's treating physician initially indicated Plaintiff was not restricted or limited after surgery, yet, as claims administrator, Lincoln

1   is not free to ignore the fact that Plaintiff's treating physician's initial statement was
2   limited to Plaintiff's post-surgery restrictions.
3       54.   Lincoln is required under ERISA to actually provide rationale for rejecting
4   the statements of Plaintiff's treating physicians, but in this matter Lincoln has not only
5   violated ERISA, but engaged in tortious bad faith by going beyond merely not providing
6   rationale for rejecting Dr. Peterson's medical statements, but in fact insisting instead that
7   they *do not exist*.
8       55.   Lincoln's actions in misinforming Plaintiff of the basic facts of Plaintiff's
9   claim are egregious, harming Plaintiff beyond mere deprivation of her owed benefits, but
10  depriving Plaintiff of the opportunity to actually participate in the administration of
11  Plaintiff's claim, a right Plaintiff has under ERISA and a right *earned* by Plaintiff
12  through her years of working as a registered nurse for the Company.
13      56.   Lincoln even dishonestly misinformed Plaintiff of the actual claims
14  administration process, stating Plaintiff was required to file an appeal within 180 days
15  when the Policy does not even *require* an appeal, prior to filing a civil action, yet Lincoln
16  insisted it did. The Policy also does not limit, or even address, the number of appeals
17  Plaintiff could file, yet Lincoln insists Plaintiff has precisely one.
18      57.   Lincoln dishonestly misinformed Plaintiff that she had three years to file a
19  civil action after the date proof of continuing disability was required, when in fact the
20  Policy requires any such claim be filed within *two* years.
21      58.   Lincoln dishonestly misinformed Plaintiff her treating physician Dr.
22  Peterson had affirmed Plaintiff was entirely not limited, at all, following her surgery, a
23  dangerous statement given Plaintiff is in fact subject to significant ongoing restrictions
24  *despite* her surgery as actually stated by Dr. Peterson.
25      59.   Lincoln's choices in this matter amount to tortious bad faith in that not only
26  did Lincoln violate ERISA in failing in multiple duties Lincoln was required to carry out
27  as addressed in Count 1 above, in fact Lincoln consistently took advantage of Lincoln's
28  role as claims administrator in mischaracterizing the actual conclusions of Lincoln's own
29  experts, mischaracterizing the views of Dr. Peterson to Lincoln's own medical expert,

and terminated Plaintiff's long-term disability benefits despite being fully aware Lincoln's own expert's report was not final absent a response from Dr. Peterson even under the terms of Lincoln's own medical expert.

60. As a result of Defendants' tortious bad faith and violation of the covenant of good faith and fair dealing Plaintiff has been damaged, in that: Plaintiff's benefits remain unpaid, Plaintiff has incurred significant legal expenses, with further damages accruing even today in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long-term disability benefits, and any other employee benefits as referenced herein that she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest (pursuant to ARS § 44-1201(b)) thereon which amounts to as of the filing month of this complaint $85,110.48;

B. For an Order requiring Defendants to pay Plaintiff statutory damages in the amount of $8,500.00 in accordance with 29 U. S. C. § 1132(c)(1).

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g);

D. Imposition of a constructive trust; and

E. For such other and further relief as the Court deems just and proper.

**DATED** this 15th day of December, 2022.

    /s/John E. Phillips
JOHN E. PHILLIPS,
Attorney at Law, P.C.
Attorney for Plaintiff

# VERIFICATION

STATE OF ARIZONA )
                 )ss:
COUNTY OF YAVAPAI )

**Susan Drake**, being first duly sworn, under oath states:

1. I am the Plaintiff in the above-entitled matter.

2. I make this Verification based upon my personal knowledge, information or belief.

3. I have read the foregoing Complaint and know the contents therein.

4. The facts and matters alleged in the Complaint are true in substance and in fact to the best of my knowledge, except to those matters alleged on information and belief and, as to those I believe them to be true.

_____
Susan Drake

**SUBSCRIBED AND SWORN** to before me on this 7th day of December, 2022, by Susan Drake.

_____
Notary Public

My Commission Expires:

04/24/26

Marlene Gonzalez
Notary Public
Yavapai County, Arizona
My Comm. Expires 04-24-26
Commission No. 630891

Page 1 of 1

John E. Phillips, Attorney at Law, P.C.
975 N. Silverbell Rd. #87968
Tucson, AZ 85754
Telephone: (520) 441-2800
E-mail: John@Johnephillips.com