**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Drake, | No. CV-22-08230-PCT-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Lincoln National Corporation, et al., | |
| Defendants. | |

Before the Court is Plaintiff Susan Drake's ("Plaintiff") Opening Brief (Doc. 30) in support of her claim for benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Defendants Lincoln National Corporation and Lincoln National Life Insurance Company ("Defendants" or "Lincoln") filed a Response brief (Doc. 41), and Plaintiff filed a Reply brief (Doc. 44) and the Administrative Record (Doc. 30-3). Having fully reviewed the record and the parties' briefing, the Court affirms Defendants' determination.

**I.   BACKGROUND**

This case concerns Plaintiff's request for relief under § 502(a)(1)(B) of ERISA to recover the disability income benefits she alleges were wrongfully denied to her by Defendants, the claims administrator of the disability policy. (Doc. 1 at ¶¶ 5, 17). Plaintiff was employed at Yavapai Regional Medical Center ("YRMC") as a registered nurse. (Doc. 1 at ¶ 18). Defendants issued YRMC long term disability ("LTD") coverage for YRMC's employees through a Group Disability Income Policy (the "LTD Policy"). (Doc. 30 at 6;

Doc. 30-1; Doc. 41 at 2).

On August 30, 2020, Plaintiff stopped working because an injury to her foot prevented her from doing her job. (Doc. 1 at ¶ 18). On October 16, 2020, Dr. Blake Peterson performed outpatient surgery on Plaintiff's foot so that she may return to work. (Doc. 30 at 4; Doc. 41 at 3). On November 24, 2020, Defendants approved Plaintiff's claim for disability benefits due to Plaintiff's foot injury and issued her three months of paid benefits. (Doc. 1 at ¶ 22; Doc. 30 at 4; Doc. 41 at 3). On January 18, 2021, Dr. Peterson explained that Plaintiff "may continue to be weight bearing as tolerated" and recommended that she use a brace. (Doc. 30-3 at 312). Dr. Peterson also discussed additional surgery to correct Plaintiff's foot deformity and the risks associated with not obtaining the surgery. (*Id.*). Plaintiff, however, declined to proceed with any additional reconstructive surgery. (*Id.*).

On February 8, 2021, Dr. Peterson opined that Plaintiff had "recovered well" and that she "may return to work." (Doc. 30-3 at 234). He also opined that Plaintiff still had an "underlying foot deformity which may cause some pain and disability but from a surgery standpoint, her torn tendons have healed." (*Id.*). Thereafter, Defendants referred Plaintiff's matter to Dr. Chirag Patel, a board-certified orthopedic surgeon to review Plaintiff's medical records. (Doc. 41 at 5). On February 23, 2021, Dr. Patel concluded that "from an orthopedic surgery perspective, a functional impairment and the need for restrictions is not supported from 2/4/21 to ongoing." (30-3 at 225). With respect to the additional surgery that Dr. Peterson recommended, Dr. Patel concluded:

> In regards to her right foot deformity, while [Plaintiff] was offered and declined reconstructive surgery, there is no information to support a functional impairment secondary to the deformity, as she worked with this condition prior to her tendon repair surgery. This suggests that while the condition may cause some pain and/or discomfort, the condition was not of such severity as to cause significant limitations or require urgent orthopedic surgery. Further comment regarding her functional status secondary to congenital pes cavus would be best reviewed by the appropriate specialty.

(30-3 at 225–26).

On February 26, 2021, Defendants informed Plaintiff that her LTD benefits were not payable beyond February 27, 2021. (Doc. 30-3 at 217). Defendants advised Plaintiff that she had a right to appeal the decision and instructed her to include with any appeal "**[u]pdated medical records for January 19, 2021 to the present.**" (Doc. 30-3 at 221 (emphasis in original)). On March 8, 2021, Dr. Peterson provided an additional opinion which stated:

> The last time I spoke with [Plaintiff], I explained that she can return to all normal activities. However, she may continue to experience some pain and disability due to her underlying cavus foot deformity. I did discuss reconstructive surgery, which she declines at this time. She will continue using a lace up ankle brace for added support. However, you are correct, from a surgical stand point she does not have any restrictions at this point.

(Doc. 30-3 at 215).

However, the next day, on March 9, 2021, Dr. Peterson opined:

> I saw [Plaintiff] again today. She continues to have significant pain and disability to the right foot and ankle. Despite being healed from the previous surgery that was performed, she is unable to walk for more than a few minutes at a time. I believe this is due to her underlying cavus foot deformity. She likely developed tendon tears in the first place due to her cavus foot deformity. Now, she is developing painful degenerative joint disease to the ankle and to the joints of the midfoot. We discussed various treatment options today and injections were performed. I also ordered a custom AFO. We have previously discussed reconstructive surgery to address the cavus foot but I would not recommend this option except as a last resort. I don't feel she is able to work at this point due to the severe pain she is experiencing and the foot deformity. We are working to get her pain improved as quickly as possible but she may have some long term disability due to these issues.

(Doc. 30-3 at 154).

Defendants argue that Dr. Peterson failed to supplement the March 9, 2021 letter with medical records reflecting his diagnosis and treatment. (Doc. 41 at 6). Defendants also

argue that Dr. Peterson failed to give specific restrictions or limitations that support a finding that Plaintiff is disabled. (*Id.*).

Plaintiff obtained counsel and sent an appeal letter with additional evidence on March 23, 2022. (Doc. 41 at 6). This information included medical records from 2020, additional reports from Dr. Peterson, and a report from vocational expert, Mark Kelman. (Doc. 30 at 6; Doc. 30-3 at 28; Doc. 41 at 7). On May 16, 2022, Defendants denied Plaintiff's appeal concluding that "proof of [Plaintiff's] continued disability in accordance with the Policy provisions after February 27, 2021 has not been provided." (Doc. 30-3 at 31).

On December 15, 2022, Plaintiff filed her Complaint in this action. (Doc. 1). Plaintiff alleges that Defendants abused their discretion in terminating Plaintiff's disability benefits and did so in bad faith. (*Id.*). Plaintiff alleges that she is entitled to disability benefits for the remaining 21 months of benefits payments at a rate of $4,052.88 per month which totals to the amount of $85,110.48. (Doc. 1 at 12 ¶ 48). On December 15, 2023, Plaintiff filed her Opening Brief (Doc. 30) and the Administrative Record (Doc. 30-3). On January 24, 2024, Defendants filed a Response Brief. (Doc. 41). On February 15, 2024, Plaintiff filed her Reply Brief. (Doc. 44). The Court now rules on Plaintiff's Opening Brief.[1]

## II.   **LEGAL STANDARD**

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotations and citations omitted). "The Act furthers these aims in part by regulating the manner in which plans process benefits claims." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). Where

---

[1] The parties have captioned their respective motions as "Opening," "Response," and "Reply" Briefs per the Court's Rule 16 Case Management Order (Doc. 26). The Court construes these motions as seeking and opposing judgment under Fed. R. Civ. P. 52 and are to be resolved by a court trial. As such, this order constitutes findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). To the extent that any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

a claimant is denied benefits by a plan administrator—both initially and after being given an opportunity to appeal—the claimant "may then seek relief in federal court 'to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan.'" *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1185 (9th Cir. 2022) (quoting ERISA § 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B)). "Depending upon the language of an ERISA plan, a district court reviews a plan administrator's decision to deny benefits either *de novo* or for abuse of discretion." *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1112 (9th Cir. 2001). Generally, the Court reviews a plan administrator's denial of benefits *de novo*. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing *Firestone*, 489 U.S. at 115). "[F]or a plan to alter the standard of review from the default of *de novo* to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Abatie*, 458 F.3d at 963.

## III.   DISCUSSION

Plaintiff contends that she is entitled to receive disability benefits in the amount of $85,110.48 because "Lincoln does not have a basis for terminating [Plaintiff's] benefits." (Doc. 30 at 18). The parties disagree as to which standard of review is appropriate in this case. Defendants argue that the Court should apply the discretion conferred by the LTD Policy, however, Plaintiff argues that the Court should apply a *de novo* standard of review. The Court will first address the appropriate standard of review. It will then turn to addressing the merits of the case.

### A. Standard of Review

As noted above, the presumptive standard of review of a decision to deny benefits is *de novo*. *Firestone*, 489 U.S. at 115 ("*De novo* is the default standard of review."). However, where the decision-maker exercises discretionary powers, a deferential standard of review is appropriate. *See id.* at 111. Therefore, if a plan unambiguously "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a denial of benefits is reviewed for abuse of discretion. *Id.*

at 115. The party seeking discretionary review has the burden to establish that the plan grants discretionary authority to the decisionmaker. *Ingram*, 244 F.3d at 1112. "To assess the applicable standard of review, the starting point is the wording of the plan." *Abatie*, 458 F.3d at 962–63 (citation omitted). "Although there are no 'magic words' that a plan must include to confer discretion, it must nevertheless clearly indicate that the decision-maker has discretion to grant or deny benefits, or to interpret the plan's terms." *Tuttle v. Varian Med. Syst. Inc.*, 15 F. Supp. 3d 944, 951 (D. Ariz. 2013) (citing *Feibusch v. Integrated Device Tech., Inc. Emp. Benefit Plan*, 463 F.3d 880, 884 (9th Cir. 2006); *Abatie*, 458 F.3d at 964. Here, Section 7 of the LTD Policy provides that:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(Doc. 30-1 at 45).

As such, the LTD Policy unambiguously grants Defendants sole discretionary authority for determining eligibility. Therefore, the Court finds that abuse of discretion is the appropriate standard of review. S*ee Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2011) (reviewing the administrator's decision for abuse of discretion rather than *de novo* because the plan expressly and unambiguously provided the administrator discretion to determine eligibility).

"Under the deferential abuse of discretion standard of review, 'the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Day v. AT & T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 512 (2010)). "ERISA plan administrators abuse their discretion if they render decisions without any explanation, . . . construe provisions of the plan in a way that conflicts with the plain language of the plan or rely on clearly erroneous findings of fact." *Day*, 698 F.3d at 1096 (quotations and citations omitted) (cleaned up). Under the abuse of discretion standard, a court considers "whether application of a correct legal

standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Salomaa*, 642 F.3d at 676 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). The court's review is limited to the record before the plan administrator. *Jebian v. Hewlett–Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003). "A reviewing court should weigh any conflict of interest or procedural irregularity as a factor in its review." *Lewis v. Unum Life Ins. Co. of Am.*, 569 F. Supp. 3d 983, 1002 (D. Ariz. 2021) (citing *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)).

          i.    Conflict of Interest

There is a structural conflict of interest "where the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Salomaa*, 642 F.3d at 674. "[I]f a plan gives discretion to an administrator operating under a conflict of interest, the conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* (citations and quotation omitted); *see Abatie*, 458 F.3d at 965 ("Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest."). The weight of this factor depends on the severity of the conflict. *Demer v. IBM Corporation LTD Plan*, 835 F.3d 893, 900 (9th Cir. 2016). "When an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." *Id.* at 972 (quotations and citations omitted)). "The burden of proving that its decision was not improperly influenced has, logically, been placed on that administrator." *Muniz v. Amec Const. Management, Inc.*, 623 F.3d 1290 (9th Cir. 2010).

Regardless of whether Plaintiff proves the conflict of interest affected Defendants' decision-making (here, she does not), the incentives inherent in ERISA cases remain unchanged and require a court review with *some* additional skepticism. *See e.g., Demer*, 835 F.3d at 903 ("[T]he lack of such specific evidence does not mean that there is *no*

7

conflict of interest.") (emphasis in original). "Structural conflicts do not divest the administrator of his delegated discretion." *Lewis*, 569 F. Supp. 3d at 1003–04 (citing *Glenn*, 554 U.S. at 115-16). "Rather, they weigh more or less heavily as factors in the abuse of discretion calculus." *Id.* (citations omitted). The parties disagree with how much additional scrutiny is merited.

Here, there is a structural conflict of interest because Defendants are responsible for determining whether Plaintiff is eligible for benefits and paying Plaintiff for those benefits. Plaintiff argues that the structural conflict is shown by Defendants providing Dr. Patel with incorrect contact information for Dr. Peterson. (Doc. 30 at 11). Plaintiff claims that this action prevented Dr. Peterson from providing additional information about his opinion prior to Defendants denying Plaintiff's benefits. (*Id.*). However, Dr. Peterson had already opined that Plaintiff was ready to return to work. (Doc. 30-3 at 234). Thus, a supplemental report was not necessary for determining Plaintiff's eligibility. Plaintiff was also able to submit Dr. Peterson's supplemental reports during her appeal. Therefore, the Court finds that this is an example of a minor irregularity that does not arise to the level of abusive discretion.

Moreover, Defendants have shown that they have taken active steps to reduce potential bias and to promote accuracy. (Doc. 41 at 13). These steps include consistently communicating with Plaintiff about her disability claim and quickly approving her claim until Dr. Peterson released her to return to work. (*Id.*). Accordingly, the Court finds that Defendants met their burden of showing that there was no bias in administering Plaintiff's disability claim. Thus, "the Court reviews Defendants' conduct under the deferential abuse of discretion standard, with only a moderate amount of additional skepticism required by Defendants' structural conflict of interest. *Lewis*, 569 F. Supp. 3d at 1005.

ii.  Procedural Irregularities

"A reviewing court should also consider procedural errors in deciding whether a plan administrator abused its discretion." *Id.* at 1002 (citing *Salomaa*, 642 F.3d at 674). The Ninth Circuit has held that "[t]here are . . . some situations in which procedural

irregularities are so substantial as to alter the standard of review." *Abatie*, 458 F.3d at 971. However, the violation must be "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Id.*; *see Horton v. Phoenix Fuels, Co., Inc.*, 611 F.Supp.2d 977, 986 (D. Ariz. 2009) ("A small procedural irregularity is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion, just as a court would weigh a conflict of interest."). Thus, procedural violations of ERISA do not alter the standard of review unless "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well." *Abatie*, 458 F.3d at 971.

Here, Plaintiff accused Defendants of several procedural violations in an effort to heighten the scrutiny applicable in this case. The Court analyzes each of these allegations in the sections below adjudicating the merits of whether Defendants abused their discretion. As such, the Court need not reiterate that discussion here. It is sufficient here to note that, as the analysis below will show, the record does not suggest "wholesale and flagrant violations of the procedural requirements of ERISA" that necessitate *de novo* review. *Id.*

**B. Merits**

Having disposed of the parties' arguments regarding preliminary matters and the weight of deference applicable to this case, the Court turns to the ultimate question: whether Defendants abused their discretion in the denial of Plaintiff's claim. Plaintiff argues that Defendants abused their discretion by failing to provide specific reasons for denying her claim, failing to provide her with full and fair review of the denial, failing to consider Dr. Peterson's opinion without an explanation, misinforming Plaintiff, failing to consider other medical impairments, and terminating Plaintiff's benefits without evidence of an actual medical improvement to the degree that Plaintiff can return to work. (*See* Docs. 30 and 44). Plaintiff also claims that she is entitled to additional damages due to Defendants' delay in providing her the claim file. (Doc. 30 at 21).

///

i.  Failure to Provide Specific Reasons for Denying Plaintiff's Claim

Plaintiff argues that Defendants abuse their discretion and violated the procedural requirements of ERISA by not providing her with specific reasons for denying her claim. (Doc. 30 at 9). The evidence shows otherwise. On February 8, 2021, Dr. Peterson reported that Plaintiff had "recovered well" and that she was able to "return to work." (Doc. 30-3 at 234). On February 26, 2021, Defendants sent a letter to Plaintiff denying her benefits. (*Id.* at 217–222). In the letter, Defendants explained that Plaintiff's disability benefits were terminated because the "medical records on file from [her] treating provider confirm[ed] that [her] condition had improved and [she was] no longer being given restrictions" that prevented her from working. (*Id.* at 219). Defendants also referenced provisions in the LTD Policy that supported its decision. (*Id.* at 220). Defendants further advised Plaintiff that if she should decide to appeal, she will need to provide the following information:

> **Medical records, including but not limited to, office treatment notes, diagnostic test results, procedure reports, restrictions and limitations, physical therapy notes, counseling records, operative reports, hospital records, prescription histories, which we do not already have in our file from your treating providers; Updated medical records for January 19, 2021 to the present.**

(*Id.* (emphasis in original)). On March 8, 2021, Dr. Peterson faxed a letter reiterating his opinion that Plaintiff was ready to return to work with no restrictions. (*Id.* at 215). The Court finds that this explanation complied with statutory requirements. Moreover, the Court finds that Defendants did not abuse their discretion in determining that Plaintiff was no longer eligible for benefits.

On March 23, 2022, Plaintiff filed an appeal with Defendants that included a letter and two forms from Dr. Peterson. (*Id.* at 140–190). The letter from Dr. Peterson was sent on March 9, 2021, and it completely contradicted the letter Dr. Peterson sent on March 8, 2021. (*Id.* at 154). In the March 9, 2021, letter Dr. Peterson explained that Plaintiff visited his office and "[s]he continues to have significant pain and disability to the right foot and

ankle." (*Id.*). Dr. Peterson also stated that he did not "feel [Plaintiff] is able to work at this point due to the severe pain she is experiencing and the foot deformity." (*Id.*). He concluded the letter by stating "she may have some long term disability due to these issues." (*Id.*). The forms were completed on July 6, 2021, and suggests that Plaintiff has developed disabling symptoms. (*Id.* at 40–41).

On May 16, 2022, Defendants reviewed this new information and explained that the Disability Nurse Case Manager reviewing her claim concluded the following:

> The last medical evaluation / treatment records on file are from a follow-up visit on January 18, 2021 with Dr. Peterson. . . . Given the lack of updated records, there is insufficient evidence to reasonably support occupational or functional impairment or to warrant the need for sustained restrictions and limitations ongoing after February 27, 2021. Updated exam findings and medical records would be needed to determine ongoing impairments and reasonable restrictions limitations after February 27, 2021.

(*Id.* at 29). Accordingly, Defendants found that the reports were based on Dr. Peterson's visit with Plaintiff in January 2021 and denied Plaintiff's appeal because she failed to provide sufficient evidence to support Dr. Peterson's change in opinion. (*Id.* at 30). Defendants concluded:

> In summary, we acknowledge that Ms. Drake may have continued to experience some symptoms associated with her condition beyond February 27, 2021. However, the information does not contain physical exam findings, diagnostic test results or other forms of medical documentation supporting impairment and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation after that date.

(*Id.*). The Court finds that this explanation also complied with statutory requirements because Defendants provided specific reasons for denying Plaintiff's claim fails. Defendants' decision to terminate Plaintiff's benefits due to lack of medical records

documenting her visits with Dr. Peterson after January 2021 was reasonable and not an abuse of discretion.

        ii.      <u>Failure to Provide Full and Fair Review of the Denial</u>

Plaintiff argues that she was not afforded a reasonable opportunity to a full and fair review of the denial. (Doc. 30 at 9–10). In her briefing, Plaintiff alleges that Defendants hired Dr. Patel to review her medical record and instructed him to contact Dr. Peterson to gather additional information about his opinion. (*Id.* at 9). Plaintiff claims that the contact information that Defendants provided for Dr. Peterson included his fax number and an incorrect telephone number. (*Id.*). Because the telephone number was incorrect, Dr. Patel was not able to contact Dr. Peterson by phone. (*Id.* at 10). However, Dr. Patel sent Dr. Peterson a letter via fax explaining that Dr. Peterson had ten days to respond with information to supplement his medical reports. (*Id.*). Defendants did not wait for Dr. Peterson's response and terminated Plaintiff's benefits within those ten days. (*Id.*). Plaintiff surmises that this violated her right to a full and fair review of the adverse benefit determination under ERISA and warrants a shift in the standard of review. (*Id.* at 10–11).

Defendants argue that these allegations do not amount to flagrant violations. (Doc. 41 at 10). The Court agrees. Defendants' failure to provide the correct telephone number and wait for an additional response from Dr. Peterson was not a flagrant violation. Dr. Peterson had already concluded that Plaintiff was able to return to work (Doc. 30-3 at 234), and Defendants notified Plaintiff that they reached their decision by relying on this conclusion. (*Id.* at 219). Additionally, Defendants provided Plaintiff with the appropriate information for appealing the denial of benefits. (*Id.* at 220–21). Defendants even followed up with Plaintiff's attorney to inquire about whether Plaintiff intended to appeal. (*Id.* at 192). Therefore, Defendants provided Plaintiff with a reasonable opportunity to seek a full and fair review of the denial. *See Abatie*, 458 F.3d at 974 ("requiring that an administrator notify a claimant of the reasons for the administrator's decisions" and allowing the claimant to review those reasons "allows for a full and fair review of the denial decision, [] required under ERISA.").

### iii. Failure to Consider Dr. Peterson's Opinion

Plaintiff argues that Defendants violated procedural requirements because Defendants only considered Dr. Patel's opinion and failed to explain why they disagreed with Dr. Peterson's opinion. (Doc. 30 at 9; Doc. 44 at 2). "Accepting the opinion of the insurance company's medical consultant over the opinion of the treating physician is not clearly erroneous." *See Fergus v. Standard Ins. Co.*, 27 F. Supp. 2d 1247, 1254 (D. Or. 1998) (citing *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 482 (9th Cir.1990)). Regardless, there is no indication that Defendants disagreed with or refused to follow Dr. Peterson's opinion by also relying on Dr. Patel's opinion. (Doc. 30-3 at 219). In fact, in the denial letter, Defendants explained that it reached its decision by relying on Dr. Peterson's opinion. (*Id.*). In his reports, Dr. Peterson opined that Plaintiff had an "underlying foot deformity which *may* cause some pain and disability but from a surgery standpoint, her torn tendons have *healed*." (*Id.* at 234 (emphasis added)). Dr. Peterson concluded that Plaintiff had "recovered well" and that she "may return to work." (*Id.*). Therefore, the Court concludes that Defendants did in fact consider Dr. Peterson's opinion.

Dr. Peterson, however, offered additional evidence contradicting his initial opinion that Plaintiff could return to work. This information was brought before Defendants once Plaintiff filed her appeal. Defendants argues that the evidence was not objective and "simply adopted [Plaintiff's] subjective beliefs about functionality." (Doc. 41 at 17). Upon reviewing Plaintiff's request for appeal, Defendants explained that Dr. Peterson's additional evidence was rejected because the evidence was "based off the January 18, 2021 office visit [] when Dr. Peterson last saw [Plaintiff]." (Doc. 30-3 at 30). Ultimately, Defendants denied Plaintiff's appeal because there was no additional information to reflect Plaintiff's condition after January 18, 2021. (*Id.*). Defendants determined that without additional information to support Dr. Peterson's contradicting opinions, Plaintiff could not prove that she had an ongoing disability. (*Id.*). Therefore, the Court rejects Plaintiff's argument that Defendants failed to provide an explanation for disagreeing with Dr. Peterson's opinion. Accordingly, the Court finds that Defendants did not violate the

procedural requirements of ERISA.

### iv. Misinforming Plaintiff

Plaintiff argues that Defendants misinformed her about what additional material or information was necessary to support continuation of benefits and improperly changed the reasons for denying her claim. (Doc. 30 at 13). Even further, Plaintiff alleges that these actions amount to fraud. (*Id.*). The Court rejects Plaintiff's claims. As previously explained, the evidence shows that Defendants properly informed Plaintiff that she needed to provide current medical information to show that she suffered from an ongoing disability. (*See* Doc. 30-3 at 219) Additionally, Plaintiff failed to show that Defendants improperly change the reasons for denying her claim. Upon initial review, Defendants rejected Plaintiff's claim because Dr. Peterson concluded that she was ready to return to work. Defendants advised Plaintiff to provide updated medical records for January 19, 2021 to present if she would like to appeal the termination of her benefits. During Plaintiff's appeal, Defendants upheld their determination and concluded that the supplemental letter and reports from Dr. Peterson was insufficient because the most recent medical record was from January 18, 2021 and Plaintiff failed to provide additional medical records for the relevant time period. (Doc. 30-3 at 30).

### v. Failure to Consider Other Medical Impairments

Plaintiff argues that the medical records she submitted to Defendants several months after her benefits were denied should have been considered during her appeal. (Doc. 44 at 6). Defendants argue that Plaintiff's coverage under the group policy ended when she was no longer actively at work and did not prove continuous disability. (Doc. 41 at 15). Therefore, Defendants argue that Plaintiff cannot meet her burden of proof that she is entitled to benefits for these injuries because she failed to submit a single medical record to show that they existed prior to her losing eligibility for disability benefits. (Doc. 41 at 15, n.6). Plaintiff argues that Defendants have not shown that Plaintiff lost her coverage under the LTD Policy. (Doc. 44 at 7). Rather, Plaintiff suggests that the "[LTD Policy] expressly recognizes medical conditions that arise while the covered person is covered

under the Policy will be treated as a sickness which must be considered under the Policy." (*Id.* (citing Doc. 30-1 at 11)).

The LTD Policy provides that "[c]essation of [a]ctive [e]mployment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to [d]isability during: a. the Elimination Period; and b. any period during which premium is being waived." (Doc. 30-1 at 40). The "'Elimination Period' means a period of consecutive days of [d]isability or [p]artial [d]isability for which no benefit is payable. The Elimination Period . . . begins on the first day of [d]isability." (*Id.* at 9). The Elimination Period is 90 days. (*Id.* at 4). Plaintiff stopped working on August 20, 2020. (Doc. 30-3 at 428). The earliest medical record reflecting injuries that were not previously disclosed to Defendants is dated May 17, 2021. (*Id.* at 89). Plaintiff failed to provide evidence that these injuries existed during the Elimination Period. Accordingly, Plaintiff is not eligible to receive benefits for these injuries because she is no longer covered by the LTD Policy.

    vi. <u>Terminating Benefits Without Evidence</u>

"[D]istrict courts within this circuit have consistently held that the burden of proof continues to lie with the plaintiff when disability benefits are terminated after an initial grant." *Muniz*, 623 F.3d at 1296. "That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date, but that fact should not itself shift the burden of proof." *Id.*

Here, Plaintiff argues that Defendants abused their discretion by terminating her benefits without evidence establishing actual medical improvement to the degree she could return to work. (Doc. 30 at 17). However, Plaintiff's medical provider, Dr. Peterson, established that she was healed and ready to return to work. Plaintiff failed to provide medical records to show that there was any change in her condition. Therefore, Plaintiff's argument fails.

    vii. <u>Failure to Provide Claim File</u>

Plaintiff claims that she is entitled to damages under 29 U.S.C. § 1132(c)(1) because Defendants failed to provide her with a copy of her claim file. (Doc. 30 at 21). "ERISA

mandates that the administrator of an employee benefit plan 'shall, upon written request of any participant or beneficiary, furnish' certain plan documents." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 602 F. Supp. 3d 1238, 1240 (N.D. Cal. 2022) (quoting 29 U.S.C. § 1024(b)(4)). "Under ERISA section 502(c)(1), where an administrator 'fails or refuses to comply' with such a request within 30 days, the administrator 'may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.'" *Id.* (quoting 29 U.S.C. § 1132(c)(1)).

"The purpose of ERISA's penalty provision is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information." *Hamilton v. Hartford Life & Acc. Ins. Co.*, No. CV-06-417-TUC-DCB, 2009 WL 5872975, at *5 (D. Ariz. Apr. 14, 2009), *aff'd sub nom. Hamilton v. Hartford Life And Acc. Ins. Co.*, 378 F. App'x 717 (9th Cir. 2010) (citing *Hess v. Hartford Life and Accident Ins. Co.,* 91 F.Supp.2d 1215 (C.D. Ill. 2000)). "An administrator's failure to produce documents properly requested by a participant subjects the administrator to liability for statutory penalties." *Hamilton*, 2009 WL 5872975 at *5. "The relevant plan documents are those documents that provide individual participants with information about the plan and benefits." *Id.* (citing *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non–Bargaining Retirement Plan,* 72 F.3d 686, 690 (9th Cir.1995)). Here, Plaintiff argues that Defendants are liable because they failed to provide her the claim file within a timely manner. (Doc. 30 at 21). The claim file is not considered a relevant *plan* document. *See id.*; *see e.g. Prado v. Allied Domecq Spirits & Wine Grp. Disability Income Pol'y*, 800 F. Supp. 2d 1077, 1101 (N.D. Cal. 2011) ("By its terms, section 1132(c) is limited to information required by 'this subchapter.' 29 U.S.C. § 1132(c). As such, it does not extend to documents identified in 29 C.F.R. § 2560.503–1."). Accordingly, the Court rejects Plaintiff's request for statutory damages.

///

///

## IV. CONCLUSION

The LTD Policy grants Defendants discretion in interpreting it and administering it. Defendants' structural conflict of interest and alleged procedural errors did not arise to the level of an abuse of discretion. The evidence shows that Plaintiff's medical provider approved her to return to work and changed his opinion without any supporting medical records only after Plaintiff was denied benefits. Accordingly, Defendants' interpretation of the LTD Policy was reasonable and, thus, not an abuse of discretion. Additionally, Plaintiff is not entitled to statutory damages because a claim file is not a relevant plan document.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's request for relief in her Opening Brief (Doc. 30) is **denied.**

**IT IS FURTHER ORDERED** the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 10th day of June, 2024.

Honorable Steven P. Logan
United States District Judge